IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MICHAEL A. ROSSI, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. WGC-12-3354 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Michael A. Rossi ("Mr. Rossi" or "Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-433, 1381-1383f. The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition. *See* ECF Nos. 5-7.[1] Pending and ready for resolution are Plaintiff's Motion for Summary Judgment or in the Alternative, Motion for Remand (ECF No. 13) and Defendant's Motion for Summary Judgment (ECF No. 18). No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons set forth below, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment (or in the Alternative, Motion for Remand) will be denied.

---

[1] The case was subsequently reassigned to the undersigned.

1

1. **Background**.

On November 9, 2009[2] Mr. Rossi protectively filed applications for DIB[3] and SSI alleging a disability onset date of May 22, 2008[4] due to acute intermittent porphyria[5], depression, anxiety, chronic rectal bleeding, chronic pancreatitis, chronic abdominal pain, chronic fatigue, insomnia, nausea and diarrhea. *See* R. at 90-94, 103. Mr. Rossi's applications were denied initially on March 19, 2010. R. at 71-75.[6] On March 26, 2010 Mr. Rossi requested reconsideration. R. at 76. On August 4, 2010 the claims were denied again. *See* R. at 77-80. On August 12, 2010 Mr. Rossi requested a hearing by an Administrative Law Judge ("ALJ"). R. at 81-82.

On September 13, 2011 an ALJ convened a hearing. R. at 28-64. Mr. Rossi was represented by counsel. During the hearing the ALJ obtained testimony from Mr. Rossi and a vocational expert ("VE"). In the October 28, 2011 decision the ALJ found Mr. Rossi has not been under a disability, as defined in the Social Security Act, from May 22, 2008 through the

---

[2] R. at 12, 121, 206. The *Application Summary for Disability Insurance Benefits* lists November 10, 2009 as the filing date. *See* R. at 90. Mr. Rossi filed the *Application Summary for Supplemental Security Income* on December 11, 2009. *See* R. at 92.

[3] "The claimant meets the insured status requirements of the Social Security Act through December 31, 2013." R. at 14. *See* R. at 95, 122, 187, 206.

[4] Mr. Rossi declared June 5, 2007 as the date he became unable to work on the *Application Summary for Disability Insurance Benefits*. R. at 90.

[5] "Porphyrias are a group of genetic disorders caused by problems with how your body makes a substance called heme. Heme is found throughout the body, especially in your blood and bone marrow, where it carries oxygen.

There are two main types of porphyrias. One affects the skin and the other affects the nervous system. People with the skin type develop blisters, itching, and swelling of their skin when it is exposed to sunlight. The nervous system type is called acute porphyria. Symptoms include pain in the chest, abdomen, limbs or back; muscle numbness, tingling, paralysis, or cramping; vomiting; constipation; and personality changes or mental disorders. These systems come and go."

*MedlinePlus*, http://www.nlm.nih.gov/medlineplus/porphyria.html (last visited Feb. 26, 2014).

[6] The administrative file contains the denial letter for Supplemental Security Income but not the denial letter for Disability Insurance Benefits.

date of the decision. R. at 20. On November 11, 2011 Mr. Rossi requested a review of the hearing decision. R. at 7-8. On September 14, 2012 the Appeals Council denied Mr. Rossi's request for review, R. at 1-6, thus making the ALJ's determination the Commissioner's final decision.

2. **ALJ's Decision**.

The ALJ evaluated Mr. Rossi's claims for DIB and SSI using the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. Mr. Rossi bears the burden of demonstrating his disability as to the first four steps. At step five the burden shifts to the Commissioner. If Mr. Rossi's claims fail at any step of the process, the ALJ does not advance to the subsequent steps. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At step one the ALJ found Mr. Rossi has not engaged in substantial gainful activity since May 22, 2008, the alleged onset date of disability. R. at 14. The ALJ concluded at step two that Mr. Rossi has the following severe impairments: "gastroenteritis[7]; headaches; adjustment disorder with depressed mood; panic attacks; and residuals from prior right patella dislocation[.]" *Id*. At step three the ALJ found Mr. Rossi does not have an impairment or combination of impairments which meets or medically equals a listed impairment. The ALJ specifically considered Listing 1.02A[8] for Mr. Rossi's residuals from prior right patella dislocation. "Despite recurrent pain in his knee with walking, the claimant has a normal gait and walks unaided. Therefore, he fails to meet this listing." R. at 15.

Regarding Mr. Rossi's headaches and gastroenteritis, the ALJ noted these conditions are not listing level impairments based on the medical evidence found in the administrative record.

---

[7] "Gastroenteritis means inflammation of the stomach and small and large intestines." *CDC, Division of Viral Diseases*, http://www.cdc.gov/ncidod/dvrd/revb/gastro/faq.htm (last visited Feb. 26, 2014).

[8] Major dysfunction of a joint(s) (due to any cause). Paragraph A requires "[i]nvolvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively as defined in 1.00B2b[.]"

3

The ALJ nevertheless would consider limitations imposed by these impairments when determining Mr. Rossi's residual functional capacity.

The ALJ next considered Listings 12.04[9] and 12.06[10] regarding Mr. Rossi's depression and anxiety. In accordance with 20 C.F.R. §§ 404.1520a, 416.920a, the ALJ followed a special technique to evaluate the severity of Mr. Rossi's depression and anxiety. The four broad functional areas — (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace and (4) episodes of decompensation — are known as the "paragraph B" criteria for most of the mental disorders listed in Appendix 1. The ALJ determined Mr. Rossi has *moderate* restriction in activities of daily living.

> The claimant testified that on a good day he is able to perform light chores around the house such as doing laundry. He is able to drive. He can take care of his personal needs. For fun, the claimant watches television, plays video games on an X-Box or uses his computer (See also Ex. 36F). The claimant does not cook. The undersigned finds the claimant has moderate restriction in this area because when he has "bad days" he is unable to perform most of these activities. It is important to note that the claimant's in[]ability to perform these activities at a given time stems from his physical, and no mental limitations.

R. at 15.

With regard to social functioning, the ALJ found Mr. Rossi has *moderate* difficulties.

> He lives with his mother and brother. The claimant reports that when he worked he related well with co-workers and supervisors; and was considered a valued employee. When he is depressed, he feels worthless and will tend to isolate himself and stay in his room. He goes out with a friend once a week to get out of the house. However, consultative physician Dr. Shakuntala Dhir,

---

[9] "*Affective Disorders:* Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. Pt. 404, Subpt. P, App 1, § 12.04 (2011).

[10] "*Anxiety Related Disorders*: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders." *Id.* § 12.06.

> M.D. opined that the claimant's ability to interact with others has been severely affected by his illness.

*Id.*

As for concentration, persistence or pace, the ALJ determined Mr. Rossi has *moderate* difficulties. "Consultative physician Dr. Dhir opined that the claimant's sustained concentration and memory during his mental status examination was adequate. However, he occasionally will have difficulty with concentration and memory due to side effects from medications." *Id.* Fourth, the ALJ found Mr. Rossi has not experienced any episodes of decompensation. Because Mr. Rossi's mental impairments do not cause two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied. The ALJ then proceeded to consider the "paragraph C" criteria. "[T]he evidence fails to establish the presence of "paragraph C" criteria because the record is devoid of evidence of episodes of decompensation, potential episodes of decompensation, or the inability to function outside a highly supportive living arrangement or outside the area of the claimant's home." R. at 16.

Having completed the special technique for evaluating Mr. Rossi's mental impairments, the ALJ proceeded to determine Mr. Rossi's residual functional capacity ("RFC").

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the ability to lift 20 pounds occasionally and 10 pounds frequently. He can sit, stand and walk six hours total each in an eight-hour workday. He can occasionally climb ramps and stairs, but never climb ladders, ropes, and/or scaffolds. He [can] perform work overhead occasionally with his non-dominant left upper extremity, otherwise he can frequently reach in all other directions. He can handle and finger frequently. He is able to understand, remember, and carry out simple instructions and use appropriate judgment to make simple work related decisions. He is able to maintain sufficient attention and concentration to

> perform simple repetitive tasks and adapt to routin[e] changes which accompany simple unskilled work. He can have occasional contact with co-workers, peers and the general public, which would only be incidental to the work performed.

*Id.*

At step four the ALJ found, in light of the VE's testimony, the demands of Mr. Rossi's past relevant work (an auto body mechanic; a department head [home improvement store]; a receiving clerk [home improvement store]; a warehouse laborer and a box deliverer) exceed Mr. Rossi's RFC. R. at 19. At step five the ALJ considered Mr. Rossi's age (32 years old on the alleged disability onset date), his education (high school; able to communicate in English), past work experience (transferability of job skills is not material to determination of disability) and his RFC (less than the full range of light work; postural and manipulative limitations; restricted to simple, routine work). The ALJ found the Social Security Administration met its burden of proving that Mr. Rossi is capable of performing various other jobs[11] that exist in significant numbers in the national economy, relying on the testimony of the VE. R. at 20, 59-61. Accordingly, the ALJ concluded that Mr. Rossi has not been under a disability, as defined by the Act, from May 22, 2008 through the date of the decision. R. at 20.

3. **Standard of Review**.

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d at 1202; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less

---

[11] A router, a mail clerk (not Post Office), and a printed circuit board installer. R. at 20, 59-61.

than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456. This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id*.

4. **Discussion**.

At the macro level, Mr. Rossi argues the ALJ erroneously assessed his (Mr. Rossi's) RFC. At the micro level, Mr. Rossi identifies multiple instances where the ALJ allegedly committed error. The court addresses these issues as follows.

   A.   *Alleged Unsupportable Residual Functional Capacity*

Mr. Rossi contends, while the ALJ described in detail the most Mr. Rossi can still do despite his impairments, *i.e.,* RFC, "there is no discussion whatsoever setting forth any rationale as to how the evidence supports each conclusion." ECF No. 13-1 at 6. The court disagrees. Mr. Rossi's medical records comprise the vast majority of the administrative record. *See* R. 227-830. In reading carefully this voluminous record, the court noted some reports are included two, and in some instances, three times in the administrative record. The ALJ thoroughly discussed the evidence of record. With over 500 pages of medical record, it is not surprising that the ALJ did not summarize or identify *every* office visit or *every* visit to the emergency room. It is apparent from reading the decision what evidence the ALJ considered and why, based on such evidence, the ALJ determined what Mr. Rossi remains capable of doing. *See* R. at 17-18.

B.  *Residuals from Prior Right Patella Dislocation*

Mr. Rossi contends the ALJ failed to include any limitation related to the severe impairment of residuals from prior right patella dislocation in assessing his RFC. ECF No. 13-1 at 7. The court disagrees.

As part of the very detailed RFC determination, the ALJ included the following limitation: "[h]e can occasionally climb ramps and stairs, but never climb ladders, ropes, and/or scaffolds." R. at 16. The ALJ summarized the evidence regarding Mr. Rossi's right knee.

> The claimant also alleged disability due to problems with his right knee. In January 2007, the claimant slipped and fell causing his kneecap to pop out (Ex. 13F, 31F). The claimant was referred to an orthopedist because he expressed concern over multiple kneecap dislocations since he was 14. X-rays of knee revealed some calcification in the medial patelloformoral ligament. Otherwise, the claimant's knee was normal. The orthopedist recommended that the claimant wear a brace. A year later, the claimant started using pain patched for his knee with positive results (Ex. 19F). He walks with a normal gait (Ex. 36F).

R. at 18.

The court finds the ALJ specifically considered Mr. Rossi's residuals from prior right patella dislocation in the RFC assessment. The restrictions (occasionally climb ramps and stairs but never climb ladders, ropes and/or scaffolds) obviously relate to Mr. Rossi's residuals from prior right patella dislocation. Those restrictions are **not** limiting effects from Mr. Rossi's gastroenteritis, headaches, adjustment disorder with depressed mood or panic attacks.

C.  *Overlooked Neck Condition*

Mr. Rossi claims the ALJ failed to address his neck condition in any manner. Mr. Rossi notes an MRI of his cervical spine taken in August of 2011. The MRI "revealed a bulging disc at C4-5, with ventral flattening of the thecal sac, a disc protrusion at C5-6, with flattening of the cervical cord, and a disc bulge at C6-7, with flattening of the cervical cord. (Tr. 805-806)." ECF

No. 13-1 at 12-13. The medical evidence further shows Mr. Rossi complained of numbness in his left thumb and index finger as well as tingling and burning in his triceps. A physical examination revealed Mr. Rossi's grip was slightly diminished on the left. Mr. Rossi was diagnosed with a herniated disc in his cervical spine and with left upper extremity radiculitis. *Id.* at 13. Mr. Rossi complains the ALJ failed to consider this evidence and did not evaluate his neck condition at any step of the sequential evaluation process.

Two sets of medical records, 48F (R. at 797-807) and 49F (R. at 808-20), document Mr. Rossi's reporting of issues with his neck and left arm. Initially Mr. Rossi could not identify what triggered the painful symptoms in his neck and left arm during a June 28, 2011 visit with his primary care physician's office. R. at 815. During a subsequent visit on July 6, 2011 Mr. Rossi recalled falling off a chair at home. R. at 820. When Mr. Rossi consulted Greater Washington Orthopaedic on July 15, 2011, he reported these ailments surfaced in May of 2011 when he fell out of a chair. R. at 798.

In his brief Mr. Rossi described the findings of the MRI concerning the severity of his neck. Mr. Rossi however failed to disclose the impression of the doctor who reviewed the MRI: "1. Mild degenerative changes. 2. Mild degenerative disk disease noted within the cervical spine, described in detail in both of report level by level." R. at 806. Because the radiologist found *mild degenerative changes* and *mild degenerative disk disease*, the court finds the ALJ did not commit a reversible error by not mentioning the results of this MRI.

Third, Mr. Rossi omits any reference to his primary care physician's office referring him to physical therapy to address his neck pain. R. at 814. Further, a medical record from a subsequent office visit on July 6, 2011 reports,

> **Neck pain** Referred to Physical Therapy, informed patient that there is nothing further we can do if he does not go. I will not

> prescribe any more pain medication for this problem, suspect patient may be drug seeking, is not following up with specialists as he needs to, exam is benign and does not match well with patient's story of severe pain.

R. at 819.

The above office note is mentioned in the ALJ's decision. *See* R. at 17. Despite Mr. Rossi's *own doctor* questioning the severity of his neck pain, the ALJ did include limiting effects from the neck pain (and residually related to the left arm) with the following restriction: "[h]e [can] perform work overhead occasionally with his non-dominant left upper extremity, otherwise he can frequently reach in all other directions." R. at 16. The court finds no reversible error by the ALJ.

### D. *Improperly Evaluated Chronic Abdominal Pain*

Mr. Rossi argues his voluminous medical records document the severity of his debilitating chronic abdominal pain. Despite this overwhelming evidence, "the Administrative Law Judge made no determination regarding the frequency, severity, or duration of the Plaintiff's chronic abdominal pain[]" in assessing his RFC. ECF No. 13-1 at 13.

In the decision the ALJ addressed Mr. Rossi's chronic abdominal pain.

> At the hearing, the claimant alleged disability due to gastroenteritis, a condition that causes him to have episodic abdominal pain and bloody stools, among other symptoms. The record supports the claimant's history of unspecified gastroenteritis (Ex. 31F, 32F). The claimant has appeared multiple times in various emergency rooms with complaints of bloody stools and abdominal pain (Ex. 8F, 9F, 10F, 12F, 36F).

> Between 2008 and 2011, the claimant has undergone a series of blood and urine tests, colonoscopies and endoscopies, and was even admitted to Johns Hopkins University Hospital for month long evaluation. However, all tests were normal findings without evidence of disease (Ex. 8F, 9F, 12F, 18F, 20F, 21F, 22F and, 23F).

> Doctors even thought the claimant had porphyria, a rare hereditary disorder causing a deficiency of a specific enzyme involved in the synthesis of heme (a substance important to many body functions) (Ex. 47F). This condition is known to cause abdominal pain followed by vomiting and constipation. However, unlike persons with a severe form of this rare disorder, the claimant's porphyria levels were low, indicating that this was not the primary cause of his abdominal pain and bleeding.
>
> Throughout his treatment history, the claimant was put on a clear liquid diet and used Dilaudid to manage his pain, yet his discomfort continued.
>
> In 2008, the claimant was sent to be evaluated by Dr. Daniel Anderson, M.D. F.A.C.P. (Ex. 20F). Dr. Anderson suggested the claimant's chronic stomach problems were likely related to his narcotic pain medication usage, and recommended that the claimant come off these medications.

R. at 17.

Dr. Anderson was not the only physician to raise a concern about the possible link between Mr. Rossi's abdominal pain and drug addiction. Jude Alexander, MD's discharge summary of October 28, 2009 states in pertinent part, "[t]he patient's abdominal pain is most likely not due to porphyria and is most likely due to withdrawal from opioids, since he was on such high doses. The patient, I believe, is suffering from addiction to opioids and he was counseled on opioid dependence." R. at 255; s*ee* R. at 538. Similarly, following a pain management consultation on May 27, 2009, Stuart Hough, MD determined "[p]robable functional abdominal pain/irritable bowel syndrome. This is usually exacerbated by narcotic use in that, with narcotic withdrawal, patients experienced an increase in cramping and then the narcotics cause constipation which magnifies pain associated with the dysmotility." R. at 681, 777. Mr. Rossi even reported to his primary care physician that he was allegedly caught "palming" his pain medication and was dismissed from the hospital. R. at 335. The court finds

the ALJ carefully considered the evidence of record. The ALJ properly considered Mr. Rossi's chronic abdominal pain in assessing Mr. Rossi's RFC.

  E.  *Opinions of Jesse Sadikman, M.D.*

Dr. Jesse Sadikman is Mr. Rossi's primary care physician. On August 28, 2009 Dr. Sadikman completed a *Medical Report Form 402B*. R. at 408-10. Dr. Sadikman did not identify any physical restrictions (sit, stand, walk, climb, bend, squat, reach, or crawl). R. at 409. Dr. Sadikman opined Mr. Rossi has a medical condition which lasted or can be expected to last at least 12 months. Dr. Sadikman identified the beginning date as July 1, 2008 to *indefinite*. R. at 410. Further Dr. Sadikman opined this condition prevents Mr. Rossi from working. Dr. Sadikman elaborated,

> Patient has chronic abdominal pain and fatigue. His symptoms are severe and debilitating. He is in the process of being evaluated for possible porphyria at JHU [Johns Hopkins University].
>
> Hopefully he will obtain a proper diagnosis and receive appropriate treatment and will have resolution of his symptoms and be able to work in the future.

*Id*.

Mr. Rossi asserts the ALJ (a) failed to weigh this opinion of his treating physician and (b) failed to accord controlling weight to this opinion. The court finds no reversible error. Whether Mr. Rossi's abdominal pain and fatigue are *severe* and *debilitating* are matters reserved to the Commissioner.

> Under 20 C.F.R. 404.1527(e) . . . some issues are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability. The following are examples of such issues:

> 1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
>
> 2. What an individual's RFC is;
>
> \*     \*     \*
>
> 5. Whether an individual is "disabled" under the Act.

SSR 96-5p[12], 1996 WL 374183, at *2 (Jul. 2, 1996). Moreover, since Dr. Sadikman opined on matters reserved to the Commissioner, these opinions are not entitled to controlling weight. "[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." *Id.*

5. **Conclusion.**

Substantial evidence supports the decision that Mr. Rossi is not disabled. Accordingly, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment (or Alternative Motion for Remand) will be denied.

Date: February 28, 2014   _____/s/_____
                          WILLIAM CONNELLY
                          UNITED STATES MAGISTRATE JUDGE

---

[12] Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner